

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–13–786

| | |
|---|---|
| J.B. BANNING AND ANN E. BANNING | **Opinion Delivered** April 2, 2014 |
| APPELLANTS | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. CV 2011-829-III] |
| V. | |
| LNV CORPORATION, MGC MORTGAGE, INC. AND KENT ANDERSON, TRUSTEE | HONORABLE LYNN WILLIAMS, JUDGE |
| APPELLEES | AFFIRMED |

## RITA W. GRUBER, Judge

J.B. Banning and Ann E. Banning appeal the May 15, 2013 order by the Garland County Circuit Court on their "Complaint for Declaratory Judgment, to Set Aside Proposed Statutory Foreclosure and Quiet Title." The order granted summary judgment to LNV Corporation (LNV) and MGC Mortgage, Inc. (MGC), on the Bannings' complaint; granted LNV's motion for default judgment against Kent Anderson, trustee of the 129 Mesa Trail Personal Property Trust; and granted summary judgment to LNV on its counterclaim for foreclosure. We affirm on all points.

The Bannings acquired the property at 129 Mesa Trail by warranty deed in 1992. They executed a $274,000 promissory note and a deed of trust to Arkansas Bank and Trust Co. in 1998. Regions Bank (f\k\a Arkansas Bank and Trust) executed an assignment of the deed of trust to Citigroup Global Markets Realty Corp (Citigroup) on September 29, 2009;

the assignment was recorded on November 17, 2009. On two occasions, Citigroup executed an assignment of the deed of trust to LNV: the first, executed on June 8, 2009, was recorded on November 17, 2009; the second, executed on September 30, 2010, was recorded on October 7, 2010. In a letter of April 2010, MGC notified the Bannings that the lender had forgiven all past-due principal, interest, and fees; that the mortgage was due for its next regularly scheduled payment in May 2010; and that past default was waived and the principal reduced accordingly.

In July 2010, the Bannings filed a lawsuit asserting separate causes of action against LNV and MGC: a quiet-title action to strip the Mesa Trail property of the lien arising from the 1998 deed of trust and "presently held by LNV pursuant to assignment," and an action against MGC seeking damages for its alleged violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e).[1] The circuit court granted summary judgment to LNV and MGC, dismissing the Bannings' claims with prejudice in an order of April 29, 2011:

> With respect to their claim against LNV to quiet title, the evidence presented established that any break in the chain of title created by an assignment to LNV by Citigroup Global Markets Realty Corp. which predated the assignment Citigroup Global Markets Realty Corp. received from Regions Bank has been corrected. The assignments recorded with the Garland County Circuit Clerk and presented to the Court establish that *LNV is the present assignee of the Deed of Trust.* . . .

> With respect to their claim against MGC, the evidence establishes that *MGC's response to the plaintiffs . . . complied with the requirements of RESPA.*

---

[1]12 U.S.C. § 2605(e) is entitled "Duty of loan server to respond to borrower inquiries."



(Emphasis added.)

The Bannings filed their second lawsuit on August 3, 2011—the quiet-title and declaratory-judgment action—after LNV executed a notice of default on the note and intent to sell property. They claimed that they were not in default, that LNV did not legally hold the note and the deed, and that MGC was not legally their service agent. The following contentions appear in the complaint:

> Citigroup purported to assign the Deed of Trust to Defendant, LNV several months before Citigroup had an interest in the Deed of Trust, before it was assigned to Citigroup by Regions (according to the documents). At the time of the Assignment (June 8, 2009), Citigroup did not own the Deed of Trust and could not have assigned the Deed of Trust. . . .
>
> 10. On October 7, 2010, a second assignment from Citigroup to Defendant, LNV was recorded . . . . The Plaintiffs deny that such assignment is a valid, genuine or enforceable assignment. *The Defendant, LNV does not own or hold the promissory note of the Plaintiffs and has not been properly assigned the deed of trust to Arkansas Bank and Trust, now Regions.*
>
> 11. On or about April 5, 2010, the Plaintiff sent a qualified written request to MGC, pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), requesting various information regarding their mortgage loan, including a complete life of loan transaction history; a payoff; a complete analysis of escrow charges; copies of all internal phone logs; adjustments made to the account for interest rate charges; and a copy of the note and deed of trust, including evidence of all endorsements of the note and assignments of the deed of trust. *MGC contends that it is entitled to service the loan which Defendant, LNV claims to own.*

(Emphasis added.)

LNV and MGC answered and moved for partial summary judgment on the basis of res judicata for claims regarding assignment of the deed of trust to LNV, asserting that the validity of the assignments had been resolved in the first lawsuit. The Bannings responded and filed their own motion for partial summary judgment, asserting that LNV and MGC were

estopped from foreclosing on the basis of res judicata because they did not seek foreclosure in the first lawsuit, when they could have done so.

LNV filed a counterclaim and cross-claim seeking in personam judgment against the Bannings and Anderson, jointly and severally; in rem judgment against the property; a declaration of LNV's first lien; and foreclosure should judgment not be paid in ten days. The Bannings answered, denying LNV's claim and affirmatively pleading estoppel, laches, setoff, equitable estoppel, unclean hands, statute of frauds, statute of limitations, waiver, and other affirmative defenses. LNV moved for default judgment against Anderson, and LNV and MGC moved for summary judgment on the Bannings' complaint and LNV's counterclaim. Attachments to the summary-judgment motion included an affidavit of Bret Maloney, MGC's senior vice president of default management; loan documents; the Bannings' discovery responses; the 2011 summary-judgment order; and assignments of the deed of trust. In their response and accompanying brief, filed on September 25, 2012, the Bannings argued that MGC had refused to supply documents proving the existence and valid assignment of the original promissory note. They asserted that discovery would confirm "that their promissory note no longer exists, or if it does, that it was never properly endorsed over to the defendant LNV by the allonge, and that the deed of trust was never properly assigned." They contended that the debt and counterclaim were unenforceable and that they did not know what amount or entity to pay.

On October 30, 2012, the Bannings filed a motion to compel discovery, stating that LNV and MGC, in their December 1, 2011 discovery responses, made blanket relevancy

objections and refused to answer interrogatories about servicing of the loan, assignments of the note, and billing practices to collect payment. LNV and MGC denied refusing to answer but admitted objecting because the claims regarding the validity of assignment to LNV had been adjudicated in the first lawsuit and thus were barred by res judicata.

The summary-judgment hearing was reset twice on the Bannings' motions—each time because of J.B. Banning's schedule—with a final setting for April 22, 2013. On April 15, 2013, the Bannings moved for an order pursuant to Ark. R. Civ. P. 56(c)(1) to supplement their summary-judgment materials with an affidavit of their expert forensic-document examiner, who had determined that signatures on the promissory note in LNV's and MGC's possession were forged. Their motion stated that the Bannings had maintained that the promissory note was not genuine and that they had been diligent in forcing production of the note, personally examining it, and having it analyzed.

At the April 2013 hearing, the circuit court noted that the Bannings had requested discovery in November 2011 and had filed the motion to compel in December 2012. The court asked, "Has it ever been set for hearing or is this the hearing date?" The Bannings' counsel, Mr. Reis, replied, "I hope it's the hearing date." The court continued to question counsel:

THE COURT: Do y'all have the note?

MR. REIS: We have a copy of what they have.

THE COURT: Do you have the copy of what your client signed at the date of closure on this matter before all litigation was started?

MR. REIS: I don't know, Your Honor.

| | |
|---|---|
| THE COURT: | Wouldn't to meet proof with proof you would need to attach what you believe the note to be? |
| MR. REIS: | You Honor, I understand the Court's point. I don't even know that we have a copy of what we signed that day. What we have is what they have attached to their lawsuit. |
| THE COURT: | You have nothing independently from your client that says this is what it is? |
| MR. REIS: | Your Honor, I can't speak for Mr. Banning. I don't have— |
| THE COURT: | You haven't attached it at this point? |
| MR. REIS: | I haven't attached it at this point. |

Counsel for LNV and MGC received permission to approach the bench, and the following colloquy ensued:

| | |
|---|---|
| MR. FORTSON: | Your Honor, I'm . . . handing you the original note. |
| THE COURT: | Are you making this original note part of the record? |
| MR. FORTSON: | Well, no, Your Honor. They raised the issues about the original note until they found out we had it, but we represented in our papers that we would bring it. Because it's a negotiable instrument, I would submit that it's not proper to make it part of the record until judgment is entered. Your Honor, in their complaint, . . . they allege execution of that note and they attach it as Exhibit B and when you compare Exhibit B that's attached, I mean you asked Mr. Reis if Mr. Banning had a copy of what he claims to have signed, this note that's attached to Exhibit B and that I have the original of and, what he's attached to his own complaint and alleged that he signed. I don't know how to say it other than to say that Mr. Banning is attempting to game the system here. |
| THE COURT: | In regard to your original note that Mr. Reis has, what notice do you wish me to make for the record? |

MR. REIS:     It's right here, Mr. Fortson.

MR. FORTSON:     Your Honor, I guess I just wanted to give the Court the opportunity to review the original note to the extent that they're saying we don't have the original. We do have it. I think it's the proper way to do it because it's a negotiable instrument and, you know, no creditor should be required to place a negotiable instrument out of its possession . . . until judgment is accepted or it's paid.

MR. REIS:     Your Honor, I don't disagree with what he said. He can do whatever he wants with the note really without objection from me, but I just need the record to be clear as to where it goes from here.

THE COURT:     I wasn't planning to take possession of it. . . . [I]t's in their possession and I don't plan to make it part of the record. I'll just make note that it was present in the courtroom for purposes of today's hearing.

The circuit court's subsequent written order, entered on May 15, 2013, included the following findings:

B. Plaintiffs have failed to meet proof with proof in response to the evidence submitted in support of the Motion for Summary Judgment filed by LNV and MGC, and no genuine issue of material fact exists with respect to any of the claims asserted in Plaintiffs' Complaint against LNV or MGC.

C. Defendant/Counterclaimant LNV is entitled to summary judgment in its favor on its Counterclaim to foreclose the Deed of Trust. LNV's Counterclaim to foreclose the Deed of Trust is not barred by res judicata. LNV's claim to foreclose the Deed of Trust does not arise out of the same transaction or occurrence that gave rise to the claims asserted by the Plaintiffs in the prior lawsuit. In addition, at the time the issues were joined in the prior lawsuit the Note and Deed of Trust had not been accelerated by LNV. LNV's claim to foreclose the Deed of Trust had therefore not matured and LNV was not required to bring it as a counterclaim in that action. *United-Bilt Homes, Inc. v. Sampson*, 315 Ark. 156, 158, 864 S.W.2d 861, 862 (1993); Ark. R. Civ. P. 13(d). Plaintiffs/Counter–Defendants have failed to meet proof with proof in response to the evidence submitted in support of the Motion for Summary Judgment filed by LNV, and no genuine issue of material fact exists with respect to the claims asserted in LNV's Counterclaim/Cross/Claim Complaint for Foreclosure. . . .

From evidence submitted with the motion for summary judgment, the court found that LNV was the holder of the note and assignee of the deed of trust, and that the sum currently owed on the note was $248,958.10.[2]  The court awarded in personam judgment against the Bannings, jointly and severally, and in rem judgment against the property for the amount owed plus interest.  The Bannings timely appealed the summary-judgment order and decree of foreclosure, specifically abandoning any unresolved and pending claims.

*Points on Appeal*

The Bannings contend that the circuit court erred (1) in granting LNV and MGC's motion for summary judgment in favor of their counterclaim and against the Bannings' claims, and (2) in granting LNV and MGC's motion for partial summary judgment on the validity of assignments, and in denying the Bannings' motion for summary judgment on LNV and MGC's foreclosure suit.  With certain exceptions not applicable here, the denial of summary judgment is generally not an appealable order.  *Jenkins v. APS Ins., LLC*, 2013 Ark. App. 746, --- S.W.3d ----.  We therefore do not address the denial of the Bannings' motion for summary judgment.

Summary judgment is to be granted only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Locke v. Cont'l Cas. Co.*, 2013 Ark. App. 690.  Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact.  *Id.*  We determine if summary judgment

---

[2]The sum was for the principal due, accrued interest, fees, and escrow advance.

was appropriate based on whether the evidentiary items presented by the moving party leave a material fact unanswered, focusing our review not only on the pleadings, but also on the affidavits and documents filed. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

I. *Whether the Trial Court Erred in Granting LNV and MGC's Motion for Summary Judgment in Favor of Their Counterclaim and Against the Bannings' Claims*

The first point has four subpoints: (A) that the circuit court should have allowed the Bannings to conduct discovery before granting summary judgment; (B) that the court erred by failing to consider their motion to supplement; (C) that LNV was not entitled to summary judgment regarding the balance owed and right to service the loan; and (D) that a question of fact existed as to the Bannings' claims. LNV and MGC assert that subpoints A and B are waived for appeal because no ruling was obtained. The Bannings counter that the circuit court did consider the motions, as shown by its reference in the summary-judgment order to the court's "considering the motions and the materials submitted therewith, the briefs in support, and the arguments of counsel." Even if there was no ruling, we would affirm.

A. Discovery

The Bannings contend that the circuit court abused its discretion by failing to continue the case to allow them to obtain discovery and by failing to compel LNV and MGC to produce discovery. We disagree.

The Bannings had possessed LNV and MGC's discovery responses for sixteen months when the summary-judgment hearing was held. In the December 2011 response, LNV and

MGC stated that the original note would be made available for inspection at a mutually agreeable time. Their counsel reiterated this position in an October 2, 2012 letter to the Bannings' counsel:

> As we stated in our original discovery responses, *I will make the original Note available for your inspection at my offices. If you would like to set up a time, please call or email me with a proposed date.* I am also enclosing a color photocopy of the Note. I did not understand this to be your request, but your brief suggests that this is what you were seeking when you requested that I email the original.

(Emphasis added.) The Bannings did not act on these offers to inspect the note; did not seek specific information in their October 30, 2012 motion to compel discovery regarding the note's assignment, transfer, and sale, and the execution of documents; and did not allege a need for discovery of the note itself in later motions to continue the summary-judgment hearing.

If the party otherwise entitled to judgment as a matter of law moves for summary judgment and shows that no dispute of material fact exists, the responding party must counter with facts showing the existence of a factual dispute. *RWR Props., Inc. v. Young*, 2009 Ark. App. 332, at 8, 308 S.W.3d 183, 187. The opposing party cannot "simply sit on its hands and do absolutely nothing to further the process along—if so, a party could always prevent summary judgment from being granted for this very reason." *Id.* at 9, 308 S.W.3d at 188. *See also Worden v. Kirchner*, 2013 Ark. 509, --- S.W.3d ---- (observing that appellants did not alert the circuit court that pertinent discovery efforts were ongoing, did not urge the court to delay considering motions to dismiss until discovery was complete, or show that additional discovery would have changed the outcome of the case).

LNV and MGC admitted in their answer to the Bannings' complaint that MGC's was the loan servicer. Mr. Maloney stated in his affidavit that he had knowledge of MGC and LNV's books and records concerning the promissory note; his affidavit also established the balance due and confirmed that MGC had serviced the loan for LNV "since before April of 2010." The Bannings failed to dispute the proper servicer of the loan or the amount due through their own affidavits or by submitting a proper affidavit under Ark. R. Civ. P. 56(f), which requires that the party opposing summary judgment state by affidavit the reason it could not provide essential evidence.

Absent an abuse of discretion prejudicial to the appealing party, the appellate court will not reverse the trial court's exercise of discretion that Rule 56(f) allows when additional time is requested for discovery. *Loghry v. Rogers Grp., Inc.*, 348 Ark. 369, 72 S.W.3d 499 (2002). The Bannings have not demonstrated how their requested discovery would have changed the outcome of the case or established a different entity as servicer. They have shown no prejudice, and the circuit court did not abuse its discretion by failing to grant additional discovery before it entered the order of summary judgment.

### B. Motion to Supplement

The party opposing summary judgment has twenty-one days to serve a response and any supporting materials. Ark. R. Civ. P. 56(c)(1). Unless the court orders otherwise, no party shall submit supplemental supporting materials after the time for serving a reply. *Id.* The Bannings proffered their purported handwriting expert's affidavit in a motion filed just seven days before the summary-judgment hearing, long after the time allowed for serving a

reply.

Moreover, a litigant cannot maintain a position inconsistent with its pleadings and allegations or assume wholly inconsistent positions on the same issue in the same case. *Int'l Harvester Co. v. Burks Motors, Inc.*, 252 Ark. 816, 481 S.W.2d 351 (1972). The Bannings alleged in their complaint that they "executed and delivered to Arkansas Bank and Trust Company a certain adjustable rate note in the principal sum of $274,000.00, a copy of which is attached hereto as Exhibit B." The exhibit included the allonge endorsing the note to LNV and was identical to the copy attached to LNV and MGC's motion for summary judgment. The Bannings admitted that the note had been executed in their reply to LNV's counterclaim, and counsel admitted at the summary-judgment hearing that he had not attached anything from his clients saying what they believed the note to be. Their late challenge to signatures was inconsistent with their assertions that they had executed the original note. The circuit court properly exercised its discretion by not considering the affidavit.

### C. The Grant of Summary Judgment Against the Bannings on Their Claims Regarding the Balance Owed and the Right to Service the Loan

The Bannings contend that LNV was not entitled to summary judgment on their claims for the balance owed and the right to service the loan. They argue that LNV, as assignee and successor-in-interest in the previous lawsuit, lost any right to bring a cause of action that should have been litigated in the first lawsuit. As will be explained in Point II, we reject this particular argument.

Moreover, the affidavit of Mr. Maloney established the balance due and MGC's right to service the loan, and the Bannings failed to present any proof to establish the existence of

a genuine issue of material fact on the issues. The Bannings did not present evidence to controvert the balance due, and they admitted in discovery that they had not made a payment on the loan since April 1, 2010. They are precluded from taking positions that are inconsistent with their assertions throughout the pleading. *Id.* Additionally, because they sought damages in the first lawsuit over alleged RESPA violations by MGC as the servicer, they cannot now claim that MGC did not establish itself as the servicer. The circuit court properly granted LVC and MGC's motions for summary judgment on the Bannings' claims of the balance due and right to service the loan.

### D. Existence of a Question of Fact as to All the Bannings' Claims

The Bannings contend that they raised a question of fact on LNV and MGC's ability to enforce the terms of the promissory note and on the balance due on the loan. They point to the allegation in their complaint that LNV did not own or hold their promissory note and had not been properly assigned the deed of trust. They note that the circuit court did not consider the affidavit of the expert they had engaged to dispute the note's authenticity, and they assert that discovery would have made a difference to the court in its determination whether LNV was the proper assignee entitled to enforce obligations of the note. They assert that their previous RESPA lawsuit against MGC did not seek information on MGC's servicing rights—a part of the second lawsuit.

In previous subpoints, we have rejected the Bannings' arguments regarding the court's failure to allow their motions for additional discovery and supplementation. We further hold that the circuit court correctly ruled that no questions of fact remained on their claims.

13

Counsel for the Bannings did not disagree or object when LNV and MGC's counsel presented the original note for the summary-judgment hearing. Furthermore, LNV and MGC attached as an exhibit to their summary-judgment motion Mr. Maloney's affidavit with a copy of the note and allonge endorsing it to LNV, and they submitted the assignments establishing LNV as assignee of the deed of trust. Mr. Maloney identified the copy as a true and correct copy of the promissory note from the Bannings, identified LNV as assignee of the deed of trust, and stated that MGC had serviced the loan for LNV. The Bannings sued MGC under RESPA in the first lawsuit, alleging that MGC, as servicer, had not responded to their written requests for information. The circuit court's finding in the first lawsuit that LNV was the present assignee of the deed of trust is res judicata to such a claim in the second lawsuit, and the Bannings have failed to raise a genuine issue of fact as to the servicing rights of MGC.

In *Killian v. Gibson*, 2012 Ark. App. 299, --- S.W.3d ----, Killian appealed a summary-judgment order against him, arguing that a dispute existed about the amount of his profit from the sale of a lot. Gibson, relying on a settlement-agreement document that Killian had provided in discovery, asserted that Killian had been paid $161,796.64, but Killian argued that he had received only $149,000 after paying fees associated with the mortgage and sale. We held that Killian failed to show that a genuine issue of fact remained:

> Under Ark. R. Civ. P. 56(e) (2011), when a motion for summary judgment is made and supported by the movant, the adverse party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Here, other than allegations contained in his complaint and the general denials alleged in his responses to the summary-judgment motion, Killian failed to provide specific proof that he received less than the $161,796.64 stated in the settlement agreement he himself provided.

14

*Killian*, 2012 Ark. App. 299, at 7,--- S.W.3d at ----.

The Bannings stated in their discovery responses that they had not made a single payment on the loan since it became current on April 1, 2010; Mr. Maloney's affidavit confirmed this fact; and the Bannings presented no evidence to dispute the amount that Mahoney attested to. Like Killian, they failed to provide documentation or other proof showing the existence of a genuine issue of fact regarding the amount they disputed.

II. *Whether the Trial Court Erred in Granting LNV's Motion for Summary Judgment on its Counterclaim for Foreclosure*

The Bannings argue that LNV and MGC's right to seek foreclosure accrued during the original action and, under Ark. R. Civ. P. 13(d), was a mandatory counterclaim in the first litigation between the parties. They assert that "the amount owed . . . was a direct issue from the first litigation," and that "the issue as to how much was owed and how much had been paid" was joined when the first lawsuit was filed. They submit that it was LNV's strategic decision to assert no claims in the first lawsuit and to attempt nonjudicial foreclosure after obtaining summary judgment. They conclude that because LNV and MGC had the right to foreclose at the time of the first litigation and chose not to do so, res judicata prevented their attempt to pursue foreclosure in the second lawsuit.

The doctrine of res judicata applies against a party when both suits involve the same claim or cause of action and the party had a fair and full opportunity to litigate the issue in question. *Martin v. Bobo*, 104 Ark. App. 330, 292 S.W.3d 865 (2009). When an appeal of a summary-judgment order involves the legal doctrine of res judicata rather than the existence of factual issues, we simply determine whether appellees were entitled to judgment as a matter

15

 

of law. *Id.* Counterclaims and cross–claims are addressed by Ark. R. Civ. P. 13:

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which, at the time of filing the pleading, the pleader has against any opposing part, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. . . .

. . . .

(d) Counterclaim Maturing or Acquired After Pleading. A claim which either matured or was acquired by the pleader after filing his pleading shall be presented as a counterclaim by supplemental pleading, provided that if such counterclaim matures or is acquired after all issues are joined, it may be asserted by the pleader in a separate action.

In *United-Bilt Homes, Inc. v. Sampson*, 315 Ark. 156, 864 S.W.2d 861 (1993), United–Bilt's action for foreclosure was not a compulsory counterclaim in a previous contract action involving the parties. The previous suit resulted in judgment to Sampson for damages against United–Bilt, the loss–payee on Sampson's homeowner's policy, for refusal to release insurance proceeds to the contractor who repaired Sampson's home after a fire. United–Bilt filed its complaint for foreclosure against Sampson the day after the decision in *Sampson I* had been handed down. Sampson filed a motion to dismiss, claiming that the foreclosure action was a compulsory counterclaim that should have been asserted in *Sampson I*. The chancellor granted dismissal, reasoning that the two cases arose from the mortgage and thus from the "same transaction or occurrence."

United–Bilt appealed, arguing that the foreclosure action did not "arise out of the transaction or occurrence" litigated in the previous suit under Rule 13(a) and that, because it did not exercise its option to accelerate the entire indebtedness until it had filed its answer,

its cause of action did not mature under Rule 13(d) until after the issues were joined. Ark. R. Civ. P. 13(a) and (d). Our supreme court reversed the order of dismissal, explaining as follows:

Initially, we observe that issues are joined when a fact or conclusion of law is asserted in one party's pleading and is admitted or denied in the responding party's pleading. We also observe that a cause of action on an entire debt owed under an installment sales contract with an optional acceleration clause does not arise until the option is exercised. The issues in *Sampson I* were joined on December 5, 1990, when United-Bilt filed its answer to Sampson's third-party complaint. As of that point in time, the record reveals that Sampson was at most two payments behind, but that United-Bilt had not exercised its option to accelerate the debt. Thus, we are inclined to agree with United–Bilt's second argument. However, because we conclude the trial court erred in determining the two cases arose out of the same transaction or occurrence, we need not analyze the merits of United–Bilt's second argument.

. . . .

While the relationship of mortgagor and mortgagee between Sampson and United–Bilt existed at the time of the contract regarding the insurance proceeds and was the reason the proceeds were payable to Sampson and United-Bilt jointly, neither this relationship nor the mortgage itself was at issue in *Sampson I.* To the contrary, it is precisely the mortgage and the mortgagee-mortgagor relationship that is at issue in the instant case.

. . . .

The transaction or occurrence at issue in *Sampson I* was the disbursement of insurance proceeds for a repair contract. The execution of the mortgage and subsequent default thereof that is at issue in the instant foreclosure action is a separate "transaction or occurrence." Thus, according to Rule 13(a), the chancellor erred in dismissing the suit.

*United-Bilt Homes*, 315 Ark. at 158–59, 864 S.W.2d at 862–63 (citations omitted).

Likewise, LNV's foreclosure suit was not barred in a second lawsuit. The issues in the first lawsuit were joined when LNV and MGC filed their answer to the complaint on August 9, 2010—five months prior to LNV's notice of default and acceleration of the note on

February 1, 2011. LNV's cause of action to foreclose did not mature until after the issues had been joined, and it was not required under Rule 13(d) to bring its claim in the first lawsuit.

Furthermore, the circuit court correctly found that LNV's claim to foreclose did not arise out of the same transaction or occurrence that gave rise to the claims asserted by the Bannings in the prior lawsuit. Although the relationship of mortgagor and mortgagee existed between LNV and the Bannings at the time of their first lawsuit, that lawsuit centered on their request to quiet title to the Mesa Trail property and whether MGC was legally their service agent. As in *Sampson II*, the mortgage and the mortgagee-mortgagor relationship was not an issue until the second case. The circuit court correctly held that res judicata did not bar LNV's right to foreclose the deed of trust.

Affirmed.

WYNNE and WOOD, JJ., agree.

*Legacy Law Group*, by: *Bryan J. Reis*, for appellants.

*Lax, Vaughan, Fortson, Jones & Rowe, P.A.*, by: *Grant E. Fortson*, for appellees.